UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Sharon Dawn Burleson, | ) | Civil Action No.: 4:22-cv-0883-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for DIB on October 3, 2019. (Tr. 20). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in April 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 11, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 20-28). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on January 18, 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this Court

in March 2022. (ECF No. 1).

**B.      Plaintiff's Background**

Plaintiff was born in November 1959, and was fifty-nine years and six months old at the alleged onset date. (Tr. 78). Plaintiff had at least a high school education and past relevant work experience as a owner/operator of a business and as a district manager/collection clerk. (Tr. 27). Plaintiff alleges disability originally due to "back problem" and diabetes. (Tr. 78). Pertinent medical records will be discussed under the relevant issue headings.

**C.      The ALJ's Decision**

In the decision of June 11, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 20-28):

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.      The claimant has not engaged in substantial gainful activity since May 31, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: spondylothisthesis and spondylosis. (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; occasionally kneeling, crouching, and crawling; and being off task not to exceed 10% of the workday and absences of no more than 1 day per month.

6.      The claimant is capable of performing past relevant work as an owner/operator of a business and as a district manager/collection clerk. This

work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2019, through the date of this decision (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the subjective symptom evaluation as to Plaintiff's pain and need for restroom breaks. (ECF No. 15 at 21). Plaintiff argues the ALJ erred in rejecting Dr. Johnson's opinion. Under the heading of PRW, Plaintiff argues: the ALJ failed to perform a function-by-function analysis as to the RFC, the ALJ failed to properly consider stand/walk abilities, especially as to the lack of discussion of the impacts of obesity on Plaintiff's functioning, the ALJ failed to address/explain attention/concentration findings as to Plaintiff's restroom needs, and the ALJ failed to give any reason for the 10% off task finding. Plaintiff argues if all these considerations had been properly made, then Plaintiff could not have returned to her highly skilled PRW. (ECF No. 15 at 24-34). Plaintiff argues the PRW of district manager/collection clerk is not within the past 15 years of the ALJ's decision of June 2021, where the job ended in February 2006. (ECF No. 15 at 34). Plaintiff argues this PRW error was harmful because there were no alternative Step Five findings.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Dr. Johnson's Opinion**

Plaintiff argues the ALJ erred in rejecting Dr. Johnson's opinion. Plaintiff acknowledges this case is governed by new regulations, but Plaintiff also extensively cites the pre-March 2017 regulations and appears to assert *Dowling v. Comm'r,* 986 F.3d 377 (4th Cir. 2021), which applied pre-March 2017 regulations because it was a pre-March 2017 action, should be applied to Plaintiff's post-March 2017 action.

For applications filed on or after March 27, 2017, such as this action, the regulatory

framework for considering and articulating the value of medical opinions has been changed. *See* §20

C.F.R § 404.1520c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence

rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new

regulations no longer require any special significance be given to opinions by a treating physician.

*See* 20 C.F.R § 404.1520c (noting that the treating physician rule only applies to claims filed before

March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical

opinions. 20 C.F.R § 404.1520c(a). Instead, the ALJ should consider and articulate in the decision

how persuasive each medical opinion is based upon the factors of: (1) supportability; (2)

consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining);

(4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20

C.F.R. § 416.920c(b),(c). Supportability and consistency are the most important of the factors for

consideration, and the ALJ is required to explain how he considered the supportability and

consistency factors in evaluating opinion evidence 20 C.F.R § 404.1520c(a), (b)(2). An ALJ is not

required to explain how the remaining factors were considered. 20 C.F.R § 404.1520c(b)(2). In

evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R § 404.1520c(c)(1).

In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Dr. Johnson, Plaintiff's treating physiatrist, completed a form. (Tr. 573). Plaintiff had been

treated since April 2016 and the form was dated April 2021. (Tr. 573). Plaintiff's diagnosis was

spinal stenosis. Plaintiff's statement "due to her lumbar disc degeneration and grade 1 spondylolisthesis, she is substantially limited in her ability to stand and/or walk for prolonged periods, has intermittent urinary incontinence, suffers from overall weakness, which greatly impacts her activities of daily living and functional capabilities, which is also exacerbated by the patient's weight" was found by Dr. Johnson to be consistent with objective medical evidence. (Tr. 573). Dr. Johnson opined Plaintiff could occasionally lift/carry less than 10 pounds and never frequently lift/carry any amount, stand/walk less than two hours total, sit about 6 hours, needed breaks every 15-30 minutes, needed frequent position changes, and needed to alternate sit/stand. Plaintiff had a vibration limitation. Plaintiff had a significant limitation in ability to concentrate and complete workday due to pain/other discomfort. (Tr. 573-576).  Plaintiff had a significant limitation in attention/concentration of 50% of workday or workweek. (Tr. 576). Plaintiff was not able to return to PRW. (Tr. 577). Plaintiff would have increased symptoms or medical treatment which would cause a work absence four or more days per month. (Tr. 577). Plaintiff could sustain no type of work activity due to combination of impairments. No significant improvement was expected. (Tr. 577).

    As to Dr. Johnson, the ALJ found the April 2021 opinion was "non-persuasive," considering that the opinions as to physical limitations were not supported by the record's physical exam findings, where Plaintiff had full strength, negative straight leg raising, non-antalgic gait, no sensory deficits, intact sensation, nontender to palpation, and no increased pain with flexion or extension. (Tr. 26). The ALJ cited to Exhibits 3F, 4F, and 8F to support this finding, which are Dr. Johnson's own treatment notes and those of other providers from the same clinic. (Tr. 410-431,528-530). Considering the ALJ's noted contrasting of Dr. Johnson's opinion findings and exam findings, it appears the ALJ also considered them inconsistent.  Viewing the opinion has a whole, earlier the

ALJ noted Dr. Johnson did not prescribe narcotic pain medications or an assistive device. (Tr. 26). Plaintiff asserts that the ALJ did not discuss supportability and consistency by the "non-persuasive" finding and failed to meet articulation requirements. As discussed above, the ALJ cited to evidence in the record that demonstrated Dr. Johnson's opinion was unsupported by record evidence and inconsistent with record exam findings.

Further, Plaintiff argues the ALJ was required to discuss additional factors and that board certification and long time relationship would weigh in favor of Dr. Johnson over other opinions. (ECF No. 20 at 35). Other factors are not required to be discussed under 20 C.F.R. § 404.1520c, unless two medical opinions about the same issue are "equally well-supported and consistent with the record but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). Contrary to Plaintiff's argument, this is not a case where the ALJ found multiple opinions to be equally well-supported and consistent with the records; because of this, the ALJ was not required to explain any consideration of the other factors. Substantial evidence supports the ALJ's findings as to Dr. Johnson's opinion.

**Subjective Symptom Evaluation and Urinary Issues**

Plaintiff argues the ALJ erred in the subjective symptom evaluation as to Plaintiff's pain and need for restroom breaks. (ECF No. 15 at 21).

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.* (internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause

9

the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual

takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Plaintiff argues the ALJ improperly focused on objective evidence in performing the subjective symptom evaluation. (ECF No. 15 at 22). An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record evidence. SSR 16-3p, at *7; 20 C.F.R. § 404.1529.

The ALJ stated that she considered all the symptoms and the extent to which the symptoms were consistent with the record evidence. (Tr. 25). The ALJ reviewed Plaintiff's testimony:

> The claimant testified and reported that she cannot work due to back pain that is a 6/10 on a good day and 9/10 on a bad day. She reported that the pain is in the center of her low back and prevents her from doing things she did in the past. The claimant stated that she cannot sit for more than 15 minutes before experiencing pain. She stated that she has undergone Botox injections for bladder spasms that have helped her a lot. The claimant indicated that she also wears adult diapers. The claimant further testified that she suffers from diabetes and panic attacks. She indicated that she spends her days watching television and that she has no hobbies. The claimant stated that she uses a chair to get up her stairs and that she has bladder accidents on a daily basis, as well as frequent urination. The claimant reported that her back pain and bladder problem prevents her from concentrating.

(Tr. 26). The ALJ then discussed Plaintiff's treatment records with Dr. Johnson for her low back pain. The ALJ reviewed MRIs before and after the alleged onset date. In December 2019, Plaintiff

had moderate facet arthropathy at L1-S1 with possible root compression at L4-5 and mild bulging at L5-S1. (Tr. 26). Plaintiff received injections. The only abnormal finding was 4+/5 giveway weakness of right hip flexion, otherwise Plaintiff examined with 5/5 strength, no sensory deficits, negative straight leg raising, sit to stand without difficulty, no increased pain with flexion and extension, and non-antalgic gait. In 2020, Plaintiff reported short term pain relief from injections and Dr. Johnson noted Plaintiff may need surgery. (Tr. 26). The ALJ found Plaintiff's statements not entirely consistent with the evidence due to moderate testing findings and mild exam findings, Dr. Johnson did not prescribed narcotic pain medications or an assistive device, and Plaintiff did not report to any provider that she had limitations of being unable to sit for more than 15 minutes. (Tr. 26).

As to Plaintiff's argument that urinary issues allegedly caused a need to urinate 12-15 times during work hours, the ALJ addressed Plaintiff's allegations of severe incontinence and daily accidents and cited to substantial evidence supporting the finding that Plaintiff's statements were inconsistent with the evidence. The ALJ cited to Plaintiff's treating urologist's notes that showed an almost complete elimination of symptoms with the use of Botox, citing Exhibit 6F. (Tr. 26-27). The treating urologist notes show abnormal objectives in 2018 before the alleged onset date with a plan to proceed with Botox as a result of the abnormal findings. (Tr. 487). Plaintiff received her first Botox injection in November 2018 before the alleged onset date of May 2019. (Tr. 491). Afterwards, in November 2018, it is noted symptoms are characterized as minimal, improving, and occur rarely. Relieving factor was Botox. Incontinence was listed as resolved. (Tr. 492). Notes stated Botox "has helped a lot [to] reduce symptoms." (Tr. 492).  "80-90% reduction in leaks after Botox. She thinks it's the best thing ever, fabulous, changed her life." (Tr. 493). Plan was "great response to Botox,

follow up in 5 months to plan next injection." (Tr. 495). The same findings were noted again in April 2019. (Tr. 497). In May 2019, Plaintiff had a UTI. (Tr. 501). Botox was scheduled for June 7, 2019. (Tr. 504). On June 7, 2019, Plaintiff received her second injection and as with the first injection, it was noted Plaintiff felt moderate improvement in symptoms. (Tr. 505).

On October 8, 2019, Plaintiff was seen by Dr. Shaffer where symptoms were noted as minimal today and occur rarely with mild urinary frequency/urgency, resolved incontinence, and only wears pad for safety. (Tr. 508). Botox had helped a lot to reduce symptoms. (Tr. 508). Plaintiff noted she was doing well at four months since her last Botox and wanted to schedule it again. (Tr. 509). Instructions were to schedule repeat injection due to great response and a preprocedural culture was needed. (Tr. 511). On December 5, 2019, Plaintiff had an acute UTI by urine test. (Tr. 512). Plaintiff was told she would have to reschedule her Botox injection. (Tr. 513).

On December 17, 2019, another lab test was run and it was not positive, so Plaintiff received her third Botox injection. (Tr. 516-517). Plaintiff had moderate improvement in symptoms with the second injection. (Tr. 517). Plaintiff was not seen again until May 26, 2020; symptoms were minimal, stable, and occurred rarely. Incontinence was listed as resolved and Plaintiff wears pad for safety (Tr. 518). It was noted that medication, Jardiance, from another provider was not tolerated as that medication had been causing her UTIs and yeast infections.[3] Plaintiff wanted to schedule another Botox. (Tr. 519). It was continued to be noted that Plaintiff had a great response and needed a preprocedural culture. (Tr. 521). The exhibit the ALJ cited Exhibit 6F ended in May 2020. There

---

[3] Plaintiff also reported this to the prescriber of that medication and the medication was discontinued. (Tr. 523).

were additional records of Botox outside of Exhibit 6F.[4]

Citing to exams, reports, and opinions, the ALJ addressed the subjective symptom evaluation in accordance with the regulations. A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not consistent with the record.

Also related to this argument, Plaintiff argues that the ALJ failed to address/explain attention/concentration RFC findings specifically as to Plaintiff's restroom needs. As discussed above, Plaintiff's treating specialist's records did not support Plaintiff's allegations as to restroom needs; thus, the ALJ cited to substantial evidence to support not converting these allegations into an accommodation in the RFC findings.

**RFC: 10% off task**

Plaintiff argues the ALJ failed to give any reason for the 10% off task finding. Plaintiff argues in part that this did not account for Plaintiff's urinary symptoms; as discussed above, the ALJ

---

[4]There is no requirement that the ALJ discuss each and every piece of evidence or statement. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)*; Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007); *Reynolds v. Kijakazi*, 2022 WL 1241646, at *5 (M.D.N.C. Apr. 27, 2022)(collecting cases).

cited substantial evidence to support not accommodating a multitude of bathroom breaks as records from Plaintiff's treating urologist showed a great response to Botox, resolved incontinence, and minimal symptoms.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ considered Plaintiff's testimony that her pain prevented her from concentrating and considered objective evidence showed moderate findings according to the imaging and mild findings upon exam. (Tr. 26). It was noted Plaintiff was not prescribed narcotic pain medications. (Tr. 26). The ALJ found that Plaintiff's impairments did result in some limitations as given in the RFC. (Tr. 27). The ALJ found the non-examining consultant opinions were persuasive as they were supported

by the objective evidence. (Tr. 27). These opinions did not find any off-task limitation; thus, the ALJ gave more limitations in Plaintiff's favor than the consulting opinions. (Tr.78-100). The ALJ explicitly found that an opinion of off task 50% of the day was unsupported by exams. (Tr. 27). The RFC was found to be supported by the mild exam findings, the moderate imaging findings, Plaintiff's response to conservative treatment, and some opinion evidence. (Tr. 27).

Substantial evidence supports the off-task RFC limitation given.

As to Plaintiff's arguments regarding a proper function-by-function[5] analysis, the RFC discussion by the ALJ permitted meaningful review, except as to the obesity concerns subject to remand discussed below. (ECF No. 15 at 26).

**PRW within 15 years**

Plaintiff argues PRW of district manager/collection clerk is not within the past 15 years of the ALJ's decision of June 2021, where the job ended in February 2006. (ECF No. 15 at 34).

Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). "We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15-year

---

[5] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018); *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).

guide is intended to insure that remote work experience is not currently applied." 20 C.F.R. § 404.1565. "[I]n some cases worked performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations." SSR. 82-62.

The ALJ found more than one job category at Step Four. The ALJ found the job of owner/operator, which was well within the 15 year guideline. (Tr. 27-28). Plaintiff herself testified that she was doing basically the same type of work in the earlier job as she did in the more recent owner job. (Tr. 48-51). There is no outcome determinative error as to this issue. (Tr. 27-28).

**Obesity**

Plaintiff argues the ALJ failed to comply with SSR[6] 19-2p as to Plaintiff's obesity. Plaintiff argues Plaintiff's severe impairments of spondylothisthesis and spondylosis and non-severe impairment of diabetes are affected in combination by Plaintiff's obesity. (ECF No. 15 at 28). Plaintiff is accurate in stating the ALJ never mentions Plaintiff's obesity[7] or provides analysis at any Step as to obesity. (Tr. 20-28). Plaintiff identifies evidence relating to function in reference to obesity: Plaintiff notes that Dr. Johnson found Plaintiff's statement–that her lumbar conditions affecting her ability to stand/walk impacted her functional capabilities "which is also exacerbated

---

[6] "Social Security Rulings, or "SSRs ," are interpretations by the Social Security Administration of the Social Security Act. They do not carry the force of law but are binding on all components of the Social Security Administration, as well as on ALJs when they are adjudicating Social Security cases." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021)(internal citations and quotations omitted).

[7] The record shows Plaintiff examined as obese several times and had BMIs ranging between 34.11-35.54 (Tr. 362, 365, 367, 376 395, 398, 402, 479, 532, 536, 539, 542). "In the medical community, obesity is defined as a BMI of 30.0 or higher. No specific weight or BMI establishes obesity as a severe impairment within the disability program." SSR 19-2p.

17

by the patient's weight"– was consistent with the objective evidence. (Tr. 573). In weighing Dr. Johnson's opinion, the ALJ did not mention this statement about exacerbation caused by weight. Plaintiff argues the ALJ's failure to consider obesity in combination affected consideration of stand/walk abilities in the RFC. (ECF No. 15 at 27-28).

Obesity was never mentioned by the ALJ. (Tr. 20-28). Defendant contends the ALJ's failure to consider obesity is harmless error because Defendant asserts that consideration of obesity would not have impacted the outcome of the case here. (ECF No. 18 at 11). Defendant provides post-hoc rationalization that the record did not contain specific treatment for obesity and did not provide a referral for further treatment, citing Tr. 365. (ECF No. 18 at 11). Defendant further asserts that Plaintiff has failed to state how obesity impaired functional ability to work. (ECF No. 18 at 12).

Obesity can clearly affect functional limitations. SSR 19-2p. Obesity may increase the severity of functional limitations of other found impairments. SSR 19-2p, *2. Obesity is required to be considered in assessing an RFC. SSR 19-2p at *4, citing 20 CFR § 404.1545. Obesity does increase stress on weight-bearing joints, which can contribute to functional limitations in range of motion, may affect manipulation of objects, and may affect the ability to tolerate certain environments. SSR 19-2 at *4. Obesity may affect the "ability to sustain function over time." SSR 19-2p at *4. By way of example, someone with a combination of obesity and arthritis may have more pain and functional limitations than someone with just arthritis alone. SSR 19-2p at *4.

Against the backdrop of SSR 19-2p, this issue is frequently addressed in the lower courts of the Fourth Circuit Court of Appeals with varying outcomes. Many decisions affirming disability denials are based on records that have a lack of supporting opinions and/or based on plaintiffs' briefs that do not identify resulting functional limitations if obesity had been considered with other

18

impairments—two items of which distinguish the instant action as requiring remand instead. *See Smith v. Saul*, 2020 WL 3442327, at *6 (E.D.N.C. May 13, 2020), *report and recommendation adopted*, 2020 WL 3442318 (E.D.N.C. June 23, 2020)(remanding where no mention of obesity in any of the five steps); *Cassandra W., v. Kijakazi.,* 2022 WL 279828, at *6–7 (D. Md. Jan. 31, 2022)(remand where ALJ found obesity as severe but did not discuss obesity in the RFC, where plaintiff had pointed to limitations attributable to obesity, such as pain that limited capacity to walk/stand throughout workday); *Sherri D. v. Kijakazi*, 2022 WL 1714850, at *3 (D. Md. Mar. 16, 2022)(affirming because plaintiff did not allege additional limitations as to obesity and did not suggest obesity would further limit standing/walking); *Crank v. Saul*, 2021 WL 955913, at *13 (S.D.W. Va. Feb. 25, 2021), *report and recommendation adopted*, 2021 WL 951751 (S.D.W. Va. Mar. 12, 2021)(affirming where no physician opined about any limitations related to obesity and plaintiff did not assert how obesity impacted abilities); *Risner v. Comm'r Soc. Sec., Admin*., No. 8:19-CV0-0753-BHH-JDA, 2020 WL 6276536, at *12 (D.S.C. Apr. 20, 2020), *report and recommendation adopted sub nom*., 2020 WL 5525391 (D.S.C. Sept. 15, 2020)(affirming where plaintiff did not direct this court to a theory of how obesity limited functional capacity); *Mohamed Kair G. v. Saul*, 2020 WL 3412997, at *5 (D. Md. June 22, 2020)(affirming, finding plaintiff had not suggested obesity would further limit his standing or walking or other functions); *Brownlee v. Saul*,  2019 WL 3858652, at *6 (M.D.N.C. Aug. 16, 2019), *report and recommendation adopted*, 2019 WL 4723257 (M.D.N.C. Sept. 26, 2019)(affirming where plaintiff did not refer to any limitation related to obesity); *Dunston v. Berryhill*, 2018 WL 4576783, at *7 (E.D.N.C. June 5, 2018), *report and recommendation adopted*, 2018 WL 4204639 (E.D.N.C. Sept. 4, 2018)(affirming, finding plaintiff had not identified how obesity impacted function).

While acknowledging that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result," here the ALJ made no mention of obesity, where SSR 19-2p requires analysis and where Plaintiff here has identified at least some record evidence for consideration of a possible impact on functional limitations. *See Morris v. Comm'r.*, No. 9:19-cv-1378-JMC-BM, 2020 WL 6218710, at *14 (D.S.C. May 21, 2020), *report and recommendation adopted sub nom.*, 2020 WL 5269796 (D.S.C. Sept. 3, 2020)(*quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). The ALJ never made any findings on obesity's impact at varying Steps. SSR 19-2p is clear that the ALJ "must consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, *4. There is an opinion by a treating physician in reference to weight exacerbating function related to other conditions, albeit vague, but unaddressed by the ALJ, and Plaintiff here has identified a possible effect on the RFC as to stand/walk. Considering all these concerns and the record in this particular case, the court cannot make its own findings in the first place about whether obesity in combination would have affected functional abilities.

Issues raised by Plaintiff regarding obesity and possible effects on the RFC should be addressed on remand by the ALJ.[8]  The court recognizes that changes upon remand to the analysis may result in changes to the opinion analysis and/or the RFC, which would further affect Steps Four and Five.

---

[8] Plaintiff's arguments regarding the RFC as to stand/walk limitations should be considered on remand.

### III. CONCLUSION

Error by the fact finder as to obesity in performing the subjective symptom evaluation and in determining Plaintiff's RFC requires remand, which also may affect the RFC as to stand/walk abilities. Proper development of the record as set out above may have a significant impact on the Commissioner's determination of subjective symptom evaluation, the RFC, and, thus, on the availability of work for Plaintiff in the national economy at Step Five. In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.


                                                    s/Thomas E. Rogers, III
December 14, 2022                                   Thomas E. Rogers, III
Florence, South Carolina                            United States Magistrate Judge

21